IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JEFFREY T. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-634-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE[1], Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

> Rory Linerud
> P.O. Box 1105
> Salem, Oregon  97308
>
> Attorney for Plaintiff

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Linda S. McMahon as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Page 1 - OPINION AND ORDER

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Stephanie R. Martz
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant


KING, Judge:

    Plaintiff Jeffrey Anderson brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

    The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

    The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

    The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir.

2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the

claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity,

disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments.  A

severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not

have a severe impairment or combination of impairments, disability benefits are denied.

    If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Anderson had severe impairments of a major depressive disorder, a personality disorder, post-traumatic stress disorder, a substance addiction disorder, and lumbar spine degenerative disc disease. However, the ALJ also found that these impairments, either

singly or in combination but considering only the limitations that would remain if Anderson

stopped using alcohol and drugs, were not severe enough to meet or medically equal the

requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security

Regulations.  The ALJ found that Anderson's assertion of the severity of his symptoms was not

credible.  Again considering only the limitations that would remain if Anderson stopped using

alcohol and drugs, the ALJ found that Anderson had the residual functional capacity to perform

medium work and limited to simple repetitive tasks with only occasional interaction with

coworkers or supervisors and no contact with the public.  Based on testimony from a vocational

expert, the ALJ found that Anderson could perform his past work as a warehouse worker or,

alternatively, could work as a kitchen helper or janitorial worker, and was thus not disabled under

the Act.

## FACTS

Anderson, who was 48 years old at the time of the ALJ's decision, has a high school

education.  He has worked as a hotel clerk, construction laborer, marine laborer, and warehouse

worker.  Anderson alleges he has been disabled since April 30, 1999 due to mental impairments

and his status post surgical hernia repairs.

Anderson complains of difficulty concentrating, difficulty understanding

communications, difficulty being around people, and constant depression which causes him to

want to stay in his room as much as two or three days a week.  He has received a lot of mental

health treatment, including therapy sessions four times a week and multiple hospitalizations for

suicide attempts or ideation.  Anderson complains of constant aching pain in his heart, mind, and

soul which is made worse by living and made better by sleeping.  He lives a very reclusive life,

staying away from people as much as possible.  Anderson is described by many of the medical
professionals as hostile, sometimes warming up a bit by the end of the interview.  He testified at
the first hearing that he does not "see much hope or any point in life at all."  Tr. 776.  Anderson
states that he cannot work because he cannot deal with people, he is easily overwhelmed, and he
becomes anxious.  He feels safer staying home where he does not have to deal with social
situations.

Anderson has struggled with alcohol and drug addiction for much of his life.  He has had
several clean and sober periods, some of them a few years long, interspersed with relapses.

Anderson spends most of his day watching television or reading.  He also checks his mail,
attends appointments, or walks around.  Anderson lives alone in an SRO hotel and takes care of
all his personal needs, including grocery shopping and cooking simple meals.

## DISCUSSION

I.    Anderson's Credibility

Anderson asserts that the ALJ erred by rejecting his symptom testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the
ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce
objective medical evidence of one or more impairments; and (2) show that the impairment or
combination of impairments could reasonably be expected to produce some degree of symptom.
Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to
produce objective medical evidence of the symptom itself, the severity of the symptom, or the
causal relationship between the medically determinable impairment and the symptom.  The
claimant is also not required to show that the impairment could reasonably be expected to cause

Page 6 - OPINION AND ORDER

the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Lack of cooperation during an evaluation and efforts to impede accurate testing of limitations are valid reasons to find that a claimant lacks credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). A tendency to exaggerate symptoms is another valid reason to support a negative credibility finding. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found that Anderson was credible to the extent he does have medically determinable impairments but not to the extent such impairments prevent him from sustaining work activities absent consideration of his alcohol and drug abuse. The ALJ relied on Anderson's questionable MMPI-II results, his questionable effort on tests, and the possibility of malingering raised by Dr. Gostnell and Dr. Zeedyk.

Dr. Gostnell performed a neuropsychological screening on Anderson on June 20, 2002. Tr. 329-345. Dr. Gostnell described Anderson as resentful, argumentative, minimally cooperative, and giving an uneven effort.

Page 7 - OPINION AND ORDER

Mr. Anderson completed two of the three tests of motivation and effort. He did not complete the computerized Word Memory Test because his extreme response latencies caused the program repeatedly to abort. On the Computerized Assessment of Response Bias his scores indicate blatant exaggeration of memory impairment. Based on binomial probability alone, his responses fell significantly below chance level, which means that he remembered the information well enough to deliberately produce wrong responses. On the Test of Memory Malingering, his scores fell significantly below those that are produced by patients who have suffered severe brain injuries or dementia, further evidence that Mr. Anderson deliberately produced incorrect responses on memory testing. By inference (given his demonstrated willingness to feign cognitive impairment) it is more probable than not that his other test scores underrepresent his cognitive and intellectual capacities. His mental status during the interview was clearly inconsistent with borderline intellectual functioning.

Similarly, his answers to the PAI items also reflect exaggeration of psychological problems. Based on his validity scale pattern, there is evidence that he produced inconsistent responses to similar items and that he over-endorsed those items that would result in an unfavorable impression or represent improbably bizarre symptoms. Consequently, the clinical scale pattern over-represents the severity and breadth of symptoms in many areas. Even taking into account his tendency to exaggerate symptoms, however, his profile suggests chronic unhappiness and helplessness, a history of antisocial behavior, and inflated self-esteem. Patients who produce similar patterns harbor feelings of anger and bitterness, as they are likely to attribute the negative circumstances of their lives to the shortcomings and malevolence of other people and, therefore, have little hope of changing those circumstances. He reveals social isolation and interpersonal anxieties, and he reports intense and recurrent suicidal thoughts, as well as poor impulse control and occasional angry outbursts.

Tr. 336.

Dr. Zeedyk performed a neuropsychological screening on Anderson on July 6-7, 2005. Tr. 690-711. She concluded that his test results were likely an under estimation of his capacity at the time. His MMPI-II produced a profile of questionable validity. "Given these validity scale findings, the profile must be interpreted very cautiously as the possibility of malingering cannot be either affirmed or dismissed." Tr. 699.

Page 8 - OPINION AND ORDER

The level of exaggeration, as shown through the testing of two psychologists, is a valid reason for the ALJ to discount Anderson's credibility concerning his mental impairments.

Concerning Anderson's physical impairment, the ALJ concluded that any pain is not supported by the records and that his treating physician, Dr. Mackette, was at a loss to explain the continued pain.  The ALJ also noted that if Anderson was in debilitating pain, he would at least have mentioned it to his mental health practitioners, whom he saw regularly.  After the hernia repairs, Anderson received no treatment for his back pain.

These are valid reasons for discounting Anderson's complaints of back or hernia pain. The medical records support the finding that there was no objective reason for the pain after the hernias were repaired.  Moreover, the fact that a claimant's symptoms are not severe enough to motivate him or her to seek other forms of treatment, even if some treatment is underway, "is powerful evidence regarding the extent" of the symptom.  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  Anderson regularly saw mental health professionals but did not mention physical pain as a problem in his life.

Accordingly, the ALJ gave clear and convincing reasons for rejecting Anderson's credibility.

II.    Physicians' Opinions

Anderson contends that the ALJ either did not include all restrictions set forth by a physician on whom the ALJ relied, or did not properly discredit an opinion which the ALJ did not adopt.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81

F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Id. at 602 (internal quotation omitted); Tonapetyan, 242 F.3d at 1149. An ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings." Batson v. Barnhart, 359 F.3d 1190, 1195 (9th Cir. 2003).

A.    Dr. Nance

Anderson contends that even though the ALJ adopted the opinion of the medical expert, Dr. Nance, the ALJ failed to include Dr. Nance's opinion that Anderson was moderately limited in his ability to work in coordination with or in proximity to others without being distracted, and to set realistic goals or make plans independently of others.

Page 10 - OPINION AND ORDER

The Commissioner contends that Anderson misunderstand's Dr. Nance's testimony about the mental limitations and that, when the testimony is properly interpreted, the ALJ included limitations consistent with the testimony.

The ALJ found that Anderson could engage in simple repetitive tasks with only occasional interaction with coworkers or supervisors, no contact with the public, and no more than medium exertion. The limitation concerning only occasional interaction with coworkers or supervisors is adequate to address Dr. Nance's opinion that Anderson was moderately limited in his ability to work in coordination with or in proximity to others without being distracted. Likewise the simple repetitive tasks limitation is sufficient to address Dr. Nance's opinion that Anderson was moderately limited in his ability to set realistic goals or make plans independently of others.

Anderson contends that the ALJ failed to include Dr. Nance's opinion that Anderson must avoid hazards. The Commissioner argues that Anderson misstated Dr. Nance's testimony on the subject.

Anderson's attorney asked Dr. Nance if a person with Anderson's mental impairments should also be limited from being around hazards. Dr. Nance asked if the attorney meant if Anderson was working on a dangerous machine for eight hours a day, would hazards be a factor. The doctor continued, "Well, clearly, if he was on psychotropic medications, it would be a factor." Tr. 826.

The job identified by the ALJ — warehouse worker, kitchen helper, or janitorial worker — do not require working around hazards for eight hours a day. Anderson points to the use of

hand tools and hand trucks in these positions.  That does not rise to the level of a dangerous machine eight hours a day, however.

In summary, the ALJ properly accounted for all limitations provided by the medical expert, Dr. Nance.

B.    DDS Physicians Dr. Alley and Dr. McDonald

Anderson asserts that the ALJ improperly rejected the opinions of the DDS nonexamining physicians when the ALJ found that Anderson could lift up to 50 pounds and had no sitting or standing limitations.

The Commissioner contends that the ALJ properly rejected these opinions because they were not consistent with the evidence, in particular with the opinion of Anderson's treating physician, Dr. Mackett.  The Commissioner also notes the ALJ's credibility determination and Anderson's failure to seek further treatment for physical complaints.

On February 9, 2001, Dr. McDonald and Dr. Alley limited Anderson to lifting less than 20 pounds, standing or walking about 6 hours in a workday, and sitting about 6 hours in a workday.  They also found Anderson only partially credible.

The ALJ gave little weight to these opinions because the physicians had not examined Anderson, records after the date of their opinion did not mention his physical problems, and his treating physician for the hernias, Dr. Mackett, had only limited Anderson to no heavy lifting, defined as lifting or carrying 100 pounds at a time with frequent lifting or carrying up to 50 pounds.

The ALJ is correct that there are no medical records that document any reason for the continued pain.  The hernia surgeries were fully healed and the lumbar spine MRI revealed two

mild bulges which no doctor attributed to causing pain.  Anderson sought no further treatment.

The ALJ properly discredited Anderson's testimony.  No examining or treating physician limited

Anderson to the extent of the nonexamining doctors.  Credibility determinations bear on the

evaluation of medical evidence when there are conflicting medical opinions or inconsistency

between a claimant's subjective complaints and his diagnosed conditions.  Webb v. Barnhart,

433 F.3d 683, 688 (9th Cir. 2005).  The ALJ has given clear and convincing reasons for

discrediting the opinions of Dr. McDonald and Dr. Alley.

      C.    DDS Psychologists Dr. Rethinger, Dr. Hennings, and Dr. LeBray

Anderson contends that the ALJ ignored the limitations described by the nonexamining

psychologists.  The Commissioner contends that the ALJ's findings are consistent with these

doctors' opinions, with the exception of Dr. LeBray's opinion that Anderson needed to work in

non-hazardous settings.  The Commissioner argues that this is harmless error because the jobs

identified by the ALJ are not in hazardous settings.

On February 9, 2001, Dr. Rethinger found that Anderson was markedly limited in the

ability to work in coordination with or proximity to others without being distracted by them, the

ability to interact appropriately with the general public, the ability to accept instructions and

respond appropriately to criticism from supervisors, the ability to get along with coworkers or

peers without distracting them or exhibiting behavioral extremes, and the ability to maintain

socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

Tr. 197-200.  On June 29, 2001, Paul Hennings found that Anderson was moderately limited in

most of these categories, as well as the ability to respond appropriately to changes in the work

setting.  Tr. 270-72.  On May 26, 2000, Dr. LeBray also found moderate limitations in most of

these categories and stated that Anderson needed to work in nonhazardous settings because of his relapse risk. Tr. 420-23.

I agree that the jobs noted by the ALJ are not in hazardous settings so any error is harmless. I also note that Dr. LeBray noted this limitation because of the risk of relapsing into alcohol or drug abuse. The ALJ's final disability determination is based on the residual functional capacity if the person is not using alcohol or drugs. Thus, the limitation does not come into play.

Turning to the mental limitations stated by the three nonexamining physicians, the ALJ did not specifically address them. The ALJ's residual functional capacity found that Anderson could engage in simple repetitive tasks with only occasional interaction with coworkers or supervisors and no contact with the public. The moderate limitations found by Dr. Hennings and Dr. LeBray are similar to the limitations found by Dr. Nance and are adequately accounted for by the ALJ's residual functional capacity. Although the marked limitations found by Dr. Rethinger are more severe, Anderson does not argue that his mental limitation meets or equal a listed impairment. I conclude that the marked limitations are also covered by the residual functional capacity determined by the ALJ. Moreover, I note that Dr. Rethinger gave his opinion prior to the psychological testing performed by Dr. Gostnell and Dr. Zeedyk which both point to exaggeration of symptoms by Anderson. I find that the ALJ did not commit an error concerning the opinions of Dr. Rethinger, Dr. Hennings, and Dr. LeBray.

D.    Dr. Newton and Dr. Williams

Anderson contends that the ALJ improperly rejected the opinions of these physicians because there is no evidence to support the ALJ's conclusion that Anderson was abusing drugs or

Page 14 - OPINION AND ORDER

alcohol when they examined him.  Anderson contends that he was in remission at the time of these examinations.

The Commissioner contends that Anderson does not cite to an opinion by Dr. Newton that was rejected by the ALJ and that the ALJ accepted Dr. Newton's diagnoses.  I agree with the Commissioner.  Dr. Newton's notes are handwritten and difficult to decipher but I see no stated limitations which the ALJ failed to address.

The Commissioner contends that the ALJ accepted Dr. Williams' assessment and interpreted it to mean that Anderson's past drug and alcohol abuse still impacted his functioning but that he would improve with a longer period of sobriety and continued treatment.

Dr. Williams examined Anderson on May 6, 2000.  She diagnosed Anderson with depression not otherwise specified; history of polysubstance abuse, currently in remission for six months by claimant's report; and personality disorder not otherwise specified.  Because of the "brief" remission, Dr. Williams stated that it is "still difficult to accurately assess his mood difficulties until he has been clean and sober for a longer period of time."  Tr. 418.  She concluded that he could perform simple and repetitive tasks, would probably have trouble accepting instructions from supervisors, and would not work on a consistent basis due to his personality disorder and functioning but "[i]t could be that with continued psychiatric care which he seems to be currently getting, he will eventually be able to complete a normal work week and deal with the stress encountered in competitive work."  Id.

The ALJ recounted Dr. Williams' opinion in detail and noted her linkage of Anderson's current inability to work with his personality disorder.  The ALJ continued:

However, the totality of the records in conjunction with the testimony of the medical expert reveals the claimant was not clean and sober as he alleged at the time of this evaluation. The report appears to indicate the claimant's limitations were due to his mental impairments without taking into consideration with [sic] effects of his polysubstance abuse. However, upon further reading, it is noted that Dr. Williams states the claimant's alleged remission from polysubstance abuse was only brief, having been only six months after a long history of very serious abuse and that it was difficult to accurately assess the mood difficulties until he had been clean and sober for a lon[g]er period of time. Thus, it is clear that Dr. Williams' opinion of an inability to work was not only based on the claimant's mental impairments but was based on the consideration of the effects of his long-term abuse. Once the claimant continued with his sobriety and with his treatment regimen, he would regain the ability to sustain work.

Tr. 478-79 n.3. The ALJ further noted in the opinion that Anderson relapsed in July 2001 and tested positive for cocaine and heroin in February 2005. Based on this, the ALJ concluded that Anderson's abuse was ongoing prior to February 2005 and severely affected his mental functioning.

Again, I agree with the Commissioner that the ALJ accepted Dr. Williams' opinion after reasonably interpreting it to mean that the limitation was due to effects of alcohol and drug abuse. Thus, there was no error for the ALJ not to include stricter mental limitations when forming Anderson's residual functional capacity for impairments that would remain if he stopped using alcohol and drugs.

III.    <u>Materiality of Anderson's Drug and Alcohol Use</u>

Anderson contends that the ALJ erred by rejecting physicians' opinions for the reason that they did know Anderson was abusing drugs when they examined him. He notes that none of these physicians qualified their opinions by stating that his limitations would be less absent drug and alcohol use. Anderson also argues that the opinions were all given at least six months after he stopped using alcohol and drugs. According to Anderson, the ALJ must affirmatively and

Page 16 - OPINION AND ORDER

conclusively show that he would not continue to be disabled if he were to cease the alcohol and drug abuse. Anderson also contends that there is no evidence to support the ALJ's conclusion that his history of episodes of decompensation occurred because he was abusing drugs or alcohol.

The Commissioner argues that Anderson has the burden of proving that substance abuse was not material to his disability claim. The Commissioner notes that the ALJ based his conclusion on the opinion of the medical expert, Dr. Nance.

As stated above, the ALJ concluded that Anderson was relapsing through February 2005. There is substantial evidence to support this conclusion. Thus, Anderson's argument that all medical opinions were given at least six months after he stopped using alcohol and drugs is not persuasive. Moreover, Dr. Williams expressly discussed the effect of Anderson's drug and alcohol abuse and believed that his functioning would continue to improve as he had a longer period of sobriety. Finally, there is evidence in the record to support a finding that the decompensations occurred due to alcohol and drug abuse. Anderson was intoxicated when hospitalized for his suicide attempts in January and July 1997. Tr. 155, 347. He admitted during a psychiatric evaluation in October 1999 that he was drunk during a suicide attempt four or five years previously. That clinician concluded his suicide risk was mild unless he relapsed on alcohol. Tr. 395. The ALJ's conclusion that the decompensations were brought on by alcohol is supported by the record.

A claimant has the burden of proving that alcoholism or drug addiction is not a contributing factor to his disability. Ball v. Massanari, 254 F.3d 817, 891 (9th Cir. 2001). Anderson has not met his burden. There is substantial evidence in the record to support the ALJ's conclusion.

Page 17 - OPINION AND ORDER

**CONCLUSION**

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____30th_____ day of May, 2007.


       _____/s/ Garr M. King_____
       Garr M. King
       United States District Judge